**John BEASLEY, et al., Respondents,**

v.

**Leone MEDIN, Appellant.**

No. C0–91–866.

Court of Appeals of Minnesota.

Jan. 14, 1992.

James° T. Martin, Gislason, Martin & Varpness, P.A., Edina, for appellant.

Jeffrey G. Stephenson, John E. Yanish, Petersen, Tews & Squires, P.A., Minneapolis, for respondents.

Considered and decided by PETERSON, P.J., and FORSBERG and SHORT, JJ.

## OPINION

FORSBERG, Judge.

This lawsuit arose out of the sale of stock of a closely-held corporation by appellant Leone Medin to respondents John Beasley and Laverne Kintop. Respondents sought damages for misrepresentation, breach of fiduciary duty, negligence, securities fraud, and breach of contract. They also sought rescission of the stock purchase transaction.

Following trial, the court ruled in favor of respondents on their claim for rescission on the basis of mutual mistake, and the parties stipulated to a damage award of $42,738.44. We reverse.

## FACTS

Medin Graphics, Inc. (hereinafter "MGI") was a Minnesota corporation in the business of brokering printing forms, color works, graphic design, and color separation products. Initially appellant Leone Medin was the sole shareholder and officer.

Respondents Laverne Kintop and John Beasley were sales representatives of MGI. In the spring of 1985, Medin proposed Beasley and Kintop each purchase one-third of the MGI stock. Gary McEnelly, MGI's outside accountant, suggested a selling price of 10% of MGI's 1984 gross sales, which were about $1.1 million. Medin offered one-third of MGI stock to Beasley and Kintop for the price of $33,333.

When Beasley and Kintop requested MGI's financial statements, McEnelly provided them with a single page of MGI's 1984 tax return. Medin informed Beasley and Kintop that preliminary financial statements indicated a $41,000 loss in retained earnings for 1985, but Medin explained that she believed this reflected an accounting error. The trial court found that Beasley and Kintop did not request nor were they denied access to MGI's complete financial records.

Medin informed Beasley and Kintop of MGI's $25,000 debt owed to the Commercial State Bank and of a $14,000 debt owed to MGI by Cabooze Enterprises, a corporation which Medin and her husband owned. MGI had borrowed money from Commercial State Bank on behalf of Cabooze and had pledged its own receivables as collateral.

Beasley and Kintop each purchased a one-third interest in MGI on July 12, 1985 for $33,000. Of the $66,000, Medin paid $33,000 to MGI as repayment of loans to Cabooze. Medin also paid off a $25,000 loan from Commercial State Bank, which MGI had obtained on behalf of Cabooze. Medin paid $3,100 that MGI owed her father, Wesley Medin, and she paid taxes of approximately $5,000 incurred in the stock transaction.

After buying MGI stock, Beasley assumed administrative and accounting duties of the company. In the fall of 1985, Beasley discovered that MGI owed $11,000 in payroll and sales tax to the State of Minnesota for 1985; that during the 15 months prior to the stock purchase, MGI's checking account was frequently overdrawn due to MGI's extension of credit to Cabooze, including an $82,000 loan; that the accounts receivable exceeded the accounts payable; that a $6,200 account payable from an MGI supplier was not booked and was overdue; and that Medin had a personal loan of $14,000 secured by MGI assets.

In February 1986, Beasley discovered that MGI's bookkeeper, Deborah Timian, had embezzled approximately $40,000 from MGI. The trial court determined that Medin had assumed there had been an accounting error in MGI's books. The trial court also determined that Timian had not informed Medin that $11,000 in state taxes were unpaid.

In the spring of 1985, MGI's competitor, Accurate Systems, Inc., had sued MGI for alleged violations of a non-competition agreement arising from MGI's employment of another sales representative. Prior to the sale of the MGI stock, Medin told Beasley and Kintop that she believed the lawsuit would be settled for $5,000.

In February or March of 1986, Medin refused Beasley and Kintop's request to rescind the stock purchase, left MGI, and abandoned her customer accounts and interest in MGI to Beasley and Kintop. Because of MGI's unmanageable debt, Beasley and Kintop began to wind down the company in the spring of 1986. In the fall of 1986, Accurate Systems obtained a default judgment against MGI in the amount of $55,000. Thereafter, Beasley and Kintop put MGI into bankruptcy and started a new company called J & L, Inc., taking a portion of MGI's accounts with them.

The trial court determined that the parties were all mistaken as to the true financial condition and value of MGI because of the Timian embezzlement and lax bookkeeping. The trial court concluded that Beasley and Kintop were entitled to rescission on the basis of mutual mistake and ordered Medin to pay Beasley and Kintop the stock price. None of the parties made a motion for amended findings or for a new trial.

On appeal, Medin asserts that rescission was inappropriate because Beasley and Kintop did not return her to the status quo ante, because Beasley and Kintop failed to investigate MGI's finances, and because there was an accord and satisfaction of the parties' dispute. Beasley and Kintop seek rescission on the basis of fraud instead of mutual mistake.

## ISSUE

■ Where the seller and purchasers of stock of a closely-held corporation are mu-

tually mistaken as to the financial condition of the corporation, is rescission of the stock purchase appropriate where the purchasers failed to investigate the corporation's finances?

## ANALYSIS

■ When neither party moves for amended findings or for a new trial, the scope of review on appeal is limited to whether the evidence sustains the factual findings and whether those findings sustain the conclusions of law. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

■ If there is a mutual mistake concerning material facts pertaining to a contract, the contracting parties may avoid the contract. *Winter v. Skoglund*, 404 N.W.2d 786, 793 (Minn.1987). A material mistake of fact is one that goes to the very nature of the purchase. *See Gartner v. Eikill*, 319 N.W.2d 397, 399 (Minn.1982).

The trial court in this case determined rescission was appropriate because the parties were mistaken about MGI's financial condition at the time of the stock sale. Beasley and Kintop based their decision to purchase the stock on their understanding of MGI's financial condition. They believed they were purchasing an equity interest in a successful ongoing business, when in fact MGI was insolvent. The trial court also determined that Medin was unaware of MGI's financial condition and that she made no false representations to Beasley and Kintop.

■ Medin argues rescission on the basis of mutual mistake is improper because Beasley and Kintop failed to make a reasonable investigation to discover readily available facts. Beasley had a college degree in business and Kintop's financial advisor told her that he needed more information to advise her on the propriety of the stock purchase. Furthermore, they both had the opportunity to question MGI's accountant. Prior to the stock purchase, MGI's books and records contained evidence of its poor financial condition and the

embezzlement of which Beasley and Kintop subsequently complained.

In *Costello v. Sykes*, 143 Minn. 109, 172 N.W. 907 (1919), the court denied rescission of a stock sale where both buyer and seller were mistaken as to the stock's value.

A mistake relating merely to the attributes, quality or value of the subject of a sale does not warrant a rescission. Neither does a mistake respecting something which was a matter of inducement to the making of the contract, where the means of information were open alike to both parties and each was equally innocent and there was no concealment of facts and no imposition.

*Id.* at 111, 172 N.W. at 908.

Beasley and Kintop claim that they requested financial information from Medin and MGI's accountant, that Medin represented to them that MGI had a value of $150,000 to $200,000, and that they trusted her statements. Because of Medin's knowledge of MGI's financial condition, and their relationship with her prior to the sale, Beasley and Kintop insist their investigation of MGI's financial condition was reasonable.

In *Gartner v. Eikill*, 319 N.W.2d 397, 399 (Minn.1982), the supreme court determined a real estate purchase agreement could be rescinded because of a mutual mistake regarding the status of the zoning regulations for the property. The court expressly noted that the purchaser had made a "reasonable inquiry" concerning the zoning regulations. *Id.* at 400. The trial court in this case determined Beasley and Kintop did not request nor were they denied access to MGI's complete financial records. Under these circumstances, we do not believe Beasley and Kintop's review of a one-page tax return and their reliance on Medin's representations constitute a "reasonable inquiry" sufficient to justify rescission for mutual mistake of material facts.

As we have determined that rescission is inappropriate in the absence of a reasonable investigation of the facts, we need not address the remaining arguments raised by Medin.

Beasley and Kintop also sought rescission of the purchase agreement on the basis of fraud. Fraud must be proven by clear and convincing evidence. *Weise v. Red Owl Stores, Inc.*, 286 Minn. 199, 203, 175 N.W.2d 184, 187 (1970). The trial court record contains insufficient evidence and findings to support claims based on fraud. Apart from its determination that "Medin made no false representations to Beasley and Kintop," the trial court made no factual findings or conclusions concerning Beasley and Kintop's claims of fraudulent misrepresentation, negligent misrepresentation, fraudulent non-disclosure, or violations of the Minnesota Securities Act. Beasley and Kintop failed to request that the trial court make findings on those claims by moving to amend under Minn. R.Civ.P. 52.02. We therefore cannot address the additional claims of Beasley and Kintop. *See Frank v. Illinois Farmers Ins. Co.*, 336 N.W.2d 307, 311 (Minn.1983).

## DECISION

The trial court's order for rescission of the stock purchase is reversed.

Reversed.