GETHSEMANE LUTHERAN CHURCH v. LEO J.
ZACHO AND OTHERS.
GEORGE T. ZACHO, THIRD-PARTY PLAINTIFF.
LUTHERAN HIGH SCHOOL ASSOCIATION AND
ANOTHER, THIRD-PARTY DEFENDANTS.

104 N. W. (2d) 645.

July 22, 1960—No. 37,855.

*William W. Essling* and *Thomas Malone,* for appellant.
*Fred N. Peterson,* for respondents.

LOEVINGER, JUSTICE.

This is a suit for specific performance of a contract for deed.

The land involved here was owned from 1926 to 1948 by Margaret Zacho, a widow. In 1948 she conveyed the land to her son Leo to be held by him in trust as her agent for purposes of convenience.

Subsequent to this, there were negotiations between Margaret Zacho, George Zacho, also Margaret's son, and Paul M. Krause, pastor of Gethsemane Lutheran Church, regarding a proposal to erect an inter-synodical Lutheran high school on this land. Others became interested, and the Lutheran High School Association of Greater St. Paul was formed as a nonprofit corporation. At the direction of Margaret Zacho, her son Leo executed a contract for deed to the land with the association on September 30, 1949. The contract for deed contained restrictions that, with immaterial exceptions, "no part of said described land shall be used by said party of the second part, its successors or assigns, for any other than religious, educational and recreational purposes in connection therewith, for a period of twenty-five (25) years"; that any recreation field should be known as "Zacho

Field"; and that during the 25-year period the land should not be used for any commercial purposes.

The association made the payments called for by the contract. However, its membership dwindled and it was unable to secure the backing required to permit it to construct and operate a high school. Consideration was then given to assigning the contract to some Lutheran synod or church which could construct and operate a school. The Zachos objected to any assignment of the contract and brought two abortive suits for reformation and rescission on the claim the contract was non-assignable.[1] On November 25, 1955, the association assigned the contract to Gethsemane Lutheran Church, subject to all the covenants of assignor.

Gethsemane tendered the balance due under the contract together with proposed plans for a Lutheran grade school and a contract for construction of the school and demanded conveyance of the land. Leo Zacho refused to convey and stated he had conveyed the land to George Zacho. George Zacho took the position that the contract had been breached, that it did not represent the true agreement between the parties, and that Gethsemane had no interest in the land. Thereupon Gethsemane brought the present action, praying that the conveyance to George Zacho be set aside and that Leo Zacho and his wife be required to perform the agreement and convey the land. George Zacho filed a third-party complaint against the association and Paul M. Krause, as officer of the association and pastor of Gethsemane, praying that the contract be reformed and canceled. Two persons claiming to be members of the association were permitted to intervene. Intervenors also sought to contest the validity of the assignment.

The district court granted summary judgment, finding that Geth-

---

[1] An action was filed on March 3, 1955, in the second judicial district of Minnesota, file No. 290431, by Margaret, Leo, and Alice Zacho against the Lutheran High School Association, Gethsemane Lutheran Church, and others. This action was dismissed without prejudice on October 28, 1955. On the following day an action was filed in the second judicial district, file No. 292921, by Margaret Zacho against the Lutheran High School Association and Paul M. Krause which was dismissed without prejudice on January 26, 1956.

semane was entitled to enforcement of the contract and that the intervenors had no capacity to appear. Appeals were taken to this court which held that there were issues of fact for trial and therefore reversed the summary judgment in favor of Gethsemane but affirmed the judgment denying the right of intervenors to appear. Gethsemane Lutheran Church v. Zacho, 253 Minn. 469, 92 N. W. (2d) 905. Additional details are set forth there.

The case was thereafter fully tried in the district court. The court found that the contract set forth the true agreement of the parties; that it was not based upon any misrepresentation of fact, deceit, or fraud; and that the plaintiff was entitled to specific performance. The court ordered that the complaint of George Zacho be dismissed and that Gethsemane have a decree of specific performance against Leo Zacho, his spouse, and George Zacho. George Zacho appeals. He claims, first, that the contract fails to express the true agreement of the parties, because of mistake by one and inequitable conduct by the other, and should be reformed; second, that the contract is not assignable; and, third, that specific performance should not be granted because the contract does not set forth the agreement which the vendor intended to make. The conditions claimed to be part of the agreement and not included in the contract as executed are that the association should construct and operate an intersynodical high school on the land, that the building should be constructed within 3 years, and that the high school should be operated for a period of 25 years, during which time title to the land should not be transferred.

There was extensive testimony concerning the conversations and negotiations preceding the drafting of the contract. There is no dispute that the parties discussed construction of an intersynodical Lutheran high school, the period of time required for construction, and operation of the school by the association. There is sharp controversy as to what was actually agreed upon. It is reasonably clear that the contract was drafted by the attorney for Margaret and George Zacho, pursuant to their instructions, and was executed in his office. Leo Zacho testified he signed the contract without reading it, and Margaret and George Zacho testified that they did not see the contract or learn of

its provisions until some years later. The attorney who drafted the contract was a reputable and competent member of the bar, was available, and appeared at the trial. No attempt was made to explain the alleged discrepancy between the intentions of the Zachos and the contract drafted by their attorney. The learned judge who tried the case specifically found that there was no misrepresentation of fact, deceit, or fraud inducing the contract, and that the contract contains the intentions and agreement of the parties.

In a case tried to the court without a jury, the findings of the trial court are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly contrary to the evidence.[2] We have reviewed the record here and are satisfied that the findings are amply supported by the evidence.

In any event, appellant does not claim that there was mutual mistake of the parties, but that Reverend Krause took advantage of the Zachos by signing the contract as presented to him without advising them that it did not contain the covenants now claimed to be part of the agreement. However, unilateral mistake is not a ground for reformation of a contract.[3] To justify a court in reforming, or rewriting, a contract, there must be clear and convincing evidence, beyond a mere preponderance, of mutual mistake or of mistake by one induced

---

[2]Rules of Civil Procedure, Rule 52.01; Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. (2d) 273; Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176; Greer v. Stannard, 85 Mont. 78, 277 P. 622, 64 A. L. R. 772; First State Bank v. Metropolitan Cas. Ins. Co. 125 Tex. 113, 79 S. W. (2d) 835, 98 A. L. R. 1256; Occidental Life Ins. Co. v. Thomas (9 Cir.) 107 F. (2d) 876; Lawson v. United States Min. Co. 207 U. S. 1, 28 S. Ct. 15, 52 L. ed. 65; Colby v. Riggs Nat. Bank, 67 App. D. C. 259, 92 F. (2d) 183, 114 A. L. R. 1065; Thayer v. Shorey, 287 Mass. 76, 191 N. E. 435, 94 A. L. R. 307.

[3]Benson v. Markoe, 37 Minn. 30, 33 N. W. 38; Olson v. Shephard, 165 Minn. 433, 206 N. W. 711; Holly Stores v. Judie (7 Cir.) 179 F. (2d) 730; Royal Ins. Co. v. City of Morgantown (N. D. W. Va.) 98 F. Supp. 609; Colvocoresses v. W. S. Wasserman Co. 26 Del. Ch. 333, 28 A. (2d) 588; Restatement, Contracts, § 509, but cf. § 505; 12 C. J. S., Cancellation of Instruments, § 27.

or known to, and taken advantage of by, the other contracting party.[4] The most that can be said for appellant's evidence is that it suggests that the Zachos either were ignorant of or misunderstood the provisions of the contract. There is not a scintilla of evidence that anyone induced them to execute the contract by misrepresentation or knew and sought to take advantage of any misunderstanding that they may have had as to the contract. Thus there is no showing to justify reformation of the contract.

In addition to seeking reformation, appellant asks rescission of the contract and also resists specific performance on the ground that vendor's misapprehension regarding the contract makes enforcement inequitable. As damages are ordinarily an inadequate remedy for breach of a promise to transfer interest in a specified tract of land, specific performance will normally be granted as a matter of right if the contract is enforceable.[5] Where exceptional circumstances make specific performance inequitable or inappropriate, the court may award compensation or damages in lieu thereof.[6] Similarly, in a suit for rescission of a contract, the court should award any relief to defendant to which he may equitably be entitled.[7] Thus to deny specific enforcement of such a contract on equitable grounds is tantamount to granting rescission, and should rest on the same basis and result in the same substantive relief.

Rescission of a contract for mistake, like reformation, is ordinarily

[4]E. R. Brenner Co. v. Brooker Engineering Co. 301 Mich. 719, 4 N. W. (2d) 71; Royal Ins. Co. v. City of Morgantown (N. D. W. Va.) 98 F. Supp. 609; Prince v. Friedman, 202 Ga. 136, 42 S. E. (2d) 434; Restatement, Contracts, §§ 505, 511.

[5]Sons of Temperance v. Brown, 9 Minn. 144 (157); General American Life Ins. Co. v. Natchitoches Oil Mill (5 Cir.) 160 F. (2d) 140; Sinclair Refining Co. v. Miller (D. Neb.) 106 F. Supp. 881; Hayes v. Disque, 401 Ill. 479, 82 N. E. (2d) 350; McKeever v. Washington Heights Realty Corp. 183 Md. 216, 37 A. (2d) 305; Restatement, Contracts, § 360; Annotation, 65 A. L. R. 7, 39.

[6]Buckley v. Patterson, 39 Minn. 250, 39 N. W. 490; 81 C. J. S., Specific Performance, § 163; Rules of Civil Procedure, Rule 54.03.

[7]12 C. J. S., Cancellation of Instruments, § 81, et seq.

founded upon either mutual mistake of the parties or a mistake by one induced or contributed to by the other.[8] It is clear, nevertheless, that the court, under its equitable power, does have the right to rescind a contract for a purely unilateral mistake of one contracting party not induced or contributed to by the other.[9] However, it is equally clear that in the interest of preserving some reasonable stability in commercial transactions the courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of or misunderstood the provisions of the contract.[10]

There are a vast number of cases relating to claims for relief from contractual obligations on grounds of unilateral mistake.[11] It would be

[8]Nadeau v. Maryland Cas. Co. 170 Minn. 326, 212 N. W. 595; C. H. Young Co. v. Springer, 113 Minn. 382, 129 N. W. 773; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; Thwing v. Hall & Ducey Lbr. Co. 40 Minn. 184, 41 N. W. 815.

[9]Hatcher v. Union Trust Co. 174 Minn. 241, 219 N. W. 76; St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N. W. 500, L. R. A. 1917D, 741; Benson v. Markoe, 37 Minn. 30, 33 N. W. 38; Moffett, Hodgkins & Clarke Co. v. Rochester, 178 U. S. 373, 20 S. Ct. 957, 44 L. ed. 1108; Annotation, 59 A. L. R. 809, and cases cited.

[10]Caldwell v. Depew, 40 Minn. 528, 42 N. W. 479; Olson v. Shephard, 165 Minn. 433, 206 N. W. 711; Travelers' Ins. Co. v. Henderson (8 Cir.) 69 F. 762, certiorari denied, 163 U. S. 708, 16 S. Ct. 1207, 41 L. ed. 312; Holly Stores v. Judie (7 Cir.) 179 F. (2d) 730; Heifetz Metal Crafts, Inc. v. Peter Kiewit Sons' Co. (8 Cir.) 264 F. (2d) 435; cf. Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185.

[11]Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185; Buckley v. Patterson, 39 Minn. 250, 39 N. W. 490; United States v. Jones (9 Cir.) 176 F. (2d) 278; cases cited in footnotes 3, 9, and 10, *supra;* Annotation, 59 A. L. R. 809, and cases cited. The latter annotation and supplements thereto cite more than 135 cases relating to this topic. There are numerous cases on similar related topics relevant to the principle involved. See, e. g., Annotation, 65 A. L. R. 7, 97, on mistake as a grounds for refusing specific performance. Compare Annotation, 137 A. L. R. 908, on conscious ignorance of fact, as distinguished from mistake, as ground for reformation of contract. See, also, Prince v. Friedman, 202 Ga. 136, 42 S. E. (2d) 434; Application of Corn Exch. Bank Trust Co. 87 N. Y. S. (2d) 675.

neither practical nor relevant to attempt to review them all here. The circumstances which will move the courts to grant such relief are various, and the views of different courts regarding them have been formulated in a variety of statements. However, our examination of the cases indicates that in all instances in which one party has been permitted to avoid the obligations of a contract merely because of unilateral mistake, there have been at least two conditions involved. Relief from contractual obligations on grounds of unilateral mistake alone has been granted only when enforcement would impose an oppressive burden on the one seeking rescission, and when rescission would impose no substantial hardship on the one seeking enforcement.

In the present case there is testimony that the land has appreciated in value since the contract was signed. There is no evidence that the original price for the land was not fair. There is testimony that the contract bears no interest as this was to be Margaret Zacho's contribution to the work of the Lutheran church. There is no evidence which would support an inference that enforcement of this contract at the present time would be oppressive to the defendants. On the contrary, Gethsemane's offer to make immediate payment of the full purchase price will save defendants the cost of a considerable amount of interest. It is claimed that the hopes of Margaret Zacho to be able to contribute to a diminution of controversy among Lutheran synods will be frustrated if the land is acquired by Gethsemane. However, the disappointment of expectations is a common experience of mankind in this imperfect world. The mere frustration of hopes does not constitute a legal injury which will entitle one to a remedy from a court. There is, therefore, no grounds for holding that the contract should be rescinded, even assuming the fact, not found by the trial court, that the contract was entered into under a mistake as to its provisions by the vendor.

Appellant further argues that the contract is not assignable because its obligations are personal to the association, and because the assignment was an ultra vires act of the association. An examination of the terms of the contract itself will show that the conditions are not personal to the association. The significant condition set forth

in the contract is that the land shall be used exclusively for religious, educational, and recreational purposes. Gethsemane is clearly in a position to fulfill this covenant.

There is a question whether appellant may assert the defense of ultra vires in a suit for enforcement of this contract. If the association were a business corporation, the defense could be asserted only by or on its behalf.[12] It is unnecessary to decide whether a similar rule applies to nonprofit corporations. Under the Minnesota Nonprofit Corporations Act, the association has the authority to dispose of its real property provided that the property is not diverted from its intended use,[13] and to make donations to other nonprofit corporations organized for related purposes.[14] Without now attempting to define the limits of this authority strictly, it appears that it is roughly similar to the cy pres rule applicable to charitable, educational, religious, and other trusts.[15] The assignment of this contract from the association to Gethsemane, subject to the covenants and conditions contained in the contract, is thus within the corporate authority of the association under applicable Minnesota law.

Appellant has made no case either for reformation or rescission of the contract involved here on either the facts or the law. There is no basis for refusing specific performance. The findings of the trial court are sustained by the record, and the conclusions of law are in accordance with the findings. The order for judgment in favor of plaintiff was proper and should be affirmed.

Affirmed.

---

[12] M. S. A. 301.12.
[13] M. S. A. 317.16, and 317.26, subd. 3.
[14] M. S. A. 317.16.
[15] M. S. A. 501.12.